UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | | |
|---|---|---|
| WILLIAM H. CONNER, | ) | |
| Plaintiff, | ) ) | |
| vs. | ) ) | 3:08-cv-00633-RCJ-RAM |
| HARRAH'S OPERATING CO., INC. et al., | ) ) | **ORDER** |
| Defendants. | ) ) | |

This case arises out of an alleged conspiracy between a Reno casino and three employees of the Nevada Gaming Control Board ("the Board") to recover an allegedly fictitious overpayment made to a gambler. Plaintiff alleges various torts committed against him during the ordeal. Pending before the Court is Defendant Harrah's Operating Co., Inc.'s ("Harrah") Motion in Limine (ECF No. 68). For the reasons given herein, the Court grants the motion in part and denies it in part.

## I.     FACTS AND PROCEDURAL HISTORY

On July 19, 2008, Plaintiff William H. Conner was gambling at a baccarat table at Harrah's Hotel and Casino in Reno, Nevada when he took his winnings and moved to another baccarat table. (First Am. Compl. ¶¶ 2, 5). After forty minutes, a Harrah's manger interrupted the game and told Plaintiff that he had been overpaid at the first table. (*Id.* ¶¶ 6–7). Although the manager indicated the incident had been captured on film, Harrah's never produced the film

1  because the manager admitted it would not show any overpayment; Plaintiff also believes the
2  security officer watching the film during the alleged overpayment could not attest to any
3  overpayment. (*See id.* ¶¶ 8, 10–11, 21).

4  The following morning, Plaintiff met with the casino operations manager who accused
5  Plaintiff of having taken an overpayment, although he did not claim to know the amount. (*Id.*
6  ¶ 9). At the end of the meeting, the casino operations manager told Plaintiff that a gaming
7  control agent would call him. (*Id.* ¶ 13). After the meeting, Defendant Steve Heiman called
8  Plaintiff, and Plaintiff again refuted the allegations that he had been overpaid. (*Id.* ¶ 14).

9  Plaintiff then contacted Heiman's supervisor, Defendant David Andrews, to arrange a
10 meeting at the offices of the Board. (*Id.* ¶ 15). Plaintiff alleges that Andrews deliberately lured
11 Plaintiff to the meeting in order to effectuate Plaintiff's arrest. (*Id.*). When Plaintiff arrived at
12 the offices of the Enforcement Division of the Board, Defendants Heiman and Russ Neil
13 confronted him with two other officers. (*Id.* ¶ 16). Heiman and Neil escorted Plaintiff to a room
14 and asked him to place his hands on the table. (*Id.*). Neil frisked Plaintiff and told him he was
15 under arrest for an unspecified felony and that Defendants were going to take him to the Washoe
16 County Detention Center. (*Id.* ¶ 17). Heiman commented that the search indicated Plaintiff's
17 penis was "the size of a Chapstick." (*Id.* ¶ 17). Plaintiff alleges implicitly that the events in this
18 room were recorded. (*See id.*). Heiman and Neil left Plaintiff under the supervision of an
19 unidentified officer, and when they returned they told Plaintiff that he had two options: (1) to be
20 escorted by the agents to Harrah's to repay the overpayment; or (2) to go to jail. (*Id.* ¶ 18).
21 Plaintiff agreed to repay the alleged overpayment under duress. (*See id.* ¶ 19). Heiman and Neil
22 took Plaintiff to Harrah's in a government car, where they met the casino operations manager,
23 who escorted them to the cashier's cage, where Plaintiff paid the alleged overpayment of $950.
24 (*Id.* ¶ 20). One of the agents said, "I'll call you later, buddy!" to the casino operations manager
25 as the agents escorted Plaintiff back to the government car. (*Id.*).

1    Plaintiff sued Harrah's, Heiman, Neil, and Andrews in this Court on fifteen causes of
2 action. (*See* Compl., Dec. 5, 2008, ECF No. 1). The First Amended Complaint ("FAC") lists
3 fourteen causes of action: (1) Civil Conspiracy; (2) Conversion; (3) Defamation; (4) Fourth
4 Amendment Violations pursuant to 42 U.S.C. § 1983; (5) First Amendment Violations pursuant
5 to § 1983; (6) Conspiracy to Violate Plaintiff's Civil Rights pursuant to § 1983; (7) False Arrest;
6 (8) False Imprisonment; (9) Battery; (10) Intentional Infliction of Emotional Distress ("IIED");
7 (11) Fifth and Sixth Amendment Violations pursuant to § 1983; (12) Respondeat Superior
8 liability against Harrah's; (13) Negligent Supervision against Harrah's; and (14) Declaratory and
9 Injunctive Relief.

10   On July 7, 2009, Judge Brian E. Sandoval granted Heiman's, Neil's, and Andrews's
11 motion to dismiss in part, leaving only the fourth and sixth causes of action as against them. (*See*
12 Order 13:27–14:3, July 7, 2009, ECF No. 23). The Court later dismissed the third, forth, fifth,
13 seventh, eighth, ninth, tenth, eleventh, and fourteenth causes of action as against Harrah's,
14 leaving the first, second, sixth, twelfth, and thirteenth causes of action against Harrah's. (*See*
15 Order 6:13–18, Feb. 22, 2010, ECF No. 41). The Court later granted summary judgment on all
16 remaining causes of action except the unreasonable seizure and civil rights conspiracy claims
17 under § 1983. (*See* Order 14:3–6, Oct. 20, 2010, ECF No. 60). Those claims (under the fourth
18 and sixth causes of action) remain for trial against all Defendants. Harrah's has now filed a
19 motion in limine requesting the exclusion of six types of evidence or argumentation.

20 **II.    LEGAL STANDARDS**

21   A motion in limine is a procedural device to obtain an early and preliminary ruling on the
22 admissibility of evidence. Black's Law Dictionary defines it as "[a] pretrial request that certain
23 inadmissible evidence not be referred to or offered at trial. Typically, a party makes this motion
24 when it believes that mere mention of the evidence during trial would be highly prejudicial and
25 could not be remedied by an instruction to disregard." *Black's Law Dictionary* 1109 (9th ed.

2009). Although the Federal Rules of Evidence do not explicitly authorize a motion in limine, the Supreme Court has held that trial judges are authorized to rule on motions in limine pursuant to their authority to manage trials. *See Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) (citing Fed. R. Evid. 103(c) (providing that trial should be conducted so as to "prevent inadmissible evidence from being suggested to the jury by any means")).

A motion in limine is a request for the court's guidance concerning an evidentiary question. *See Wilson v. Williams*, 182 F.3d 562, 570 (7th Cir. 1999). Judges have broad discretion when ruling on motions in limine. *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002). However, a motion in limine should not be used to resolve factual disputes or weigh evidence. *See C&E Servs., Inc., v. Ashland, Inc.*, 539 F. Supp. 2d 316, 323 (D.D.C. 2008). To exclude evidence on a motion in limine "the evidence must be inadmissible on all potential grounds." *E.g.*, *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). "Unless evidence meets this high standard, evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context." *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993). This is because although rulings on motions in limine may save "time, costs, effort and preparation, a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Wilkins v. Kmart Corp.*, 487 F. Supp. 2d 1216, 1219 (D. Kan. 2007).

In limine rulings are provisional. Such "rulings are not binding on the trial judge [who] may always change his mind during the course of a trial." *Ohler v. United States*, 529 U.S. 753, 758 n.3 (2000); *accord Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to change, especially if the evidence unfolds in an unanticipated manner). "Denial of a motion in limine does not necessarily mean that all evidence contemplated by the motion will be admitted to trial. Denial merely means that without the context of trial, the court is unable to determine whether the evidence in question should be excluded." *Ind. Ins. Co.*, 326 F. Supp. 2d at 846.

### III. ANALYSIS

First, Harrah's asks the Court to exclude any reference to Heiman's subjective motivations, because such motivations are not an element of a Fourth Amendment unreasonable seizure claim. The Court grants this request in part. Subjective motivations are irrelevant to probable cause, *Whren v. United States*, 517 U.S. 806, 812–13 (1996), and the analysis is no different in a § 1983 action, *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (citing *id.*). The Court will therefore exclude evidence of motivation as it applies to the unreasonable seizure claim. However, subjective motivations may be relevant to proving a civil rights conspiracy. In addition to an actual deprivation of rights, a civil rights conspiracy claim requires proof that the deprivation resulted from an express or implied agreement, *Ting v. United States*, 927 F.2d 1504, 1512 (9th Cir. 1991) (*Bivens* action), and evidence of motivation may be relevant to proving such an agreement. The Court will therefore not categorically exclude motivation evidence. If such evidence is offered and admitted, Defendants may be entitled to a limiting instruction.

Second, Harrah's asks the Court to exclude irrelevant evidence as a general matter. Harrah's identifies no particular piece of evidence to exclude as irrelevant and in fact claims that it does not expect Plaintiff to present irrelevant evidence. The Court grants the request as a formality, but this simply amounts to an affirmation of the Court's intent not to permit the parties to flout Rule 402. The parties must, as always, remain en guard for opposing counsel's potential malfeasance during the examination of witnesses, a practice that no preliminary order can prevent, and sanctions for which no preliminary order is necessary.

Third, Harrah's asks the Court to exclude testimony that no overpayment in fact occurred. Harrah's argues that at oral argument and in his deposition, Plaintiff has admitted that he does not know if he was overpaid and that the Court should therefore rule that the fact he was overpaid has been conclusively proved. The Court denies this request. If Plaintiff testifies that he was definitively not overpaid, Defendants will be free to impeach him with his prior

1  testimony or otherwise, and his credibility will be a matter for the jury.  Harrah's argues that
2  only the Defendants' perception of Plaintiff's mens rea for theft is at issue, and Plaintiff should
3  not be able to argue actus reus.  But a probable cause inquiry is double-layered, and there are in
4  fact four interrelated issues: (1) Plaintiff's actus reus; (2) Plaintiff's mens rea; (3) Defendants'
5  actus reus; and (4) Defendant's mens rea.  To prove a civil rights violation based on an
6  unreasonable seizure for lack of probable cause to arrest, a plaintiff must prove a seizure
7  occurred (element 3) without probable cause (element 4).  Element 4 in this case depends in turn
8  on Defendants' perception of elements 1 and 2, because the underlying crime supporting the
9  seizure, i.e. theft, requires both elements.  The Court has never ruled that element 1 has been
10 conclusively proved.  At the summary judgment stage, the Court ruled that Plaintiff had not
11 carried his shifted burden to avoid summary judgment on the conversion claim based on a failure
12 to show a genuine issue of material fact on the issue.  The Court specifically noted that the
13 surveillance tape would presumably be good evidence of the disputed fact, but that neither party
14 had produced it and Plaintiff had apparently not at that stage pressed any motion to compel its
15 production.  It is possible the tape will be adduced at trial.  Presumably such evidence could lead
16 to a reasonable inference that Plaintiff was not overpaid.  There may also be other evidence at
17 trial directly proving no overpayment or permitting such an inference.  For example, one of
18 Defendants' own witnesses may make an admission while in the crucible of cross-examination
19 that he did not make during his deposition.  Any evidence produced at trial concerning whether
20 there was in fact an overpayment will be probative of the issue of probable cause if it can be
21 reasonably inferred that Defendants had access to that information.  The Court therefore denies
22 this request.
23      Fourth, Harrah's asks the Court to exclude "Golden Rule arguments" to the jury
24 imploring the jury to put themselves in Plaintiff's shoes.  The Court grants this request.  *See, e.g.*,
25 *Woods v. Burlington N. R.R. Co.*, 768 F.2d 1287, 1292 (11th Cir. 1985), *rev'd on other grounds*,

480 U.S. 1.

Fifth, Harrah's asks the Court to exclude as irrelevant any reference to its size or wealth. The Supreme Court has upheld jury instructions permitting consideration of "the wealth of the perpetrator" against a due process challenge, because the financial position of a defendant may be taken into account in awarding punitive damages. *See TXO Prod. Corp. v. Alliance Res. Corp.*, 509 U.S. 443, 463–64 & n.29 (1993) (plurality opinion); *id.* at 470–72 (Scalia, J., concurring in the judgment); *id.* at 491–92 (Connor, J., dissenting). No justice opined that the wealth of a defendant could not be considered in determining punitive damages as a rule, and only three of the justices would have held that the consideration of the defendant's wealth in that particular case had crossed the boundary of due process. *See id.* at 491–92 (Connor, J., dissenting). Punitive damages are available in § 1983 cases. The Court therefore denies the request, although Defendants may be entitled to a limiting instruction. Incidentally, the Ninth Circuit's standard instruction on punitive damages includes no reference to wealth, but the comments thereto indicate that such evidence is permissible, with a limiting instruction. *See* Ninth Cir. Model Civ. J.I. 5.5 cmt. (seventh unnumbered paragraph).

Sixth, Harrah's asks the Court to exclude any evidence of its insurance to prove liability. The Court grants this request; however, such evidence is admissible to prove any disputed issue of agency, bias, prejudice, or ownership or control of the premises. *See* Fed. R. Evid. 411.

Finally, as the parties noted at oral argument, the Court has been divested of jurisdiction to proceed with the trial by the present appeal of the qualified immunity issue. *See Padgett v. Wright*, 587 F.3d 983, 985 (9th Cir. 2009). Still, the Court believes it may make these preliminary evidentiary rulings, though the trial itself is indefinitely delayed for lack of jurisdiction to proceed.

///

///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion in Limine (ECF No. 68) is GRANTED in part and DENIED in part.

IT IS SO ORDERED.

Dated this 25th day of July, 2011.

_____
ROBERT C. JONES
United States District Judge