# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | | |
|---|---|---|
| WILLIAM H. CONNER, | ) | |
| Plaintiff, | ) | |
| | ) | 3:08-cv-00633-RCJ-WGC |
| vs. | ) | |
| | ) | |
| HARRAH'S OPERATING CO., INC. et al., | ) | **ORDER** |
| | ) | |
| Defendants. | ) | |

This case arises out of an alleged conspiracy between a Reno casino and three employees of the Nevada Gaming Control Board ("the Board") to recover an allegedly fictitious overpayment made to a gambler. Pending before the Court is Defendant Harrah's Operating Co., Inc.'s ("Harrah") motion to reconsider. For the reasons given herein, the Court denies the motion.

## I.  FACTS AND PROCEDURAL HISTORY

On July 19, 2008, Plaintiff William H. Conner was gambling at a baccarat table at Harrah's Hotel and Casino in Reno, Nevada when he took his winnings and moved to another baccarat table. (First Am. Compl. ¶¶ 2, 5). After forty minutes, a Harrah's manger interrupted the game and told Plaintiff that he had been overpaid at the first table. (*Id.* ¶¶ 6–7). Although the manager indicated the incident had been captured on film, Harrah's never produced the film because the manager admitted it would not show any overpayment; Plaintiff also believes the

1 security officer watching the film during the alleged overpayment could not attest to any
2 overpayment. (*See id.* ¶¶ 8, 10–11, 21).

3     The following morning, Plaintiff met with the casino operations manager who accused
4 Plaintiff of having taken an overpayment, although he did not claim to know the amount. (*Id.* ¶
5 9). At the end of the meeting, the casino operations manager told Plaintiff that a gaming control
6 agent would call him. (*Id.* ¶ 13). After the meeting, Defendant Steve Heiman called Plaintiff, and
7 Plaintiff again refuted the allegations that he had been overpaid. (*Id.* ¶ 14).

8     Plaintiff then contacted Heiman's supervisor, Defendant David Andrews, to arrange a
9 meeting at the offices of the Board. (*Id.* ¶ 15). Plaintiff alleges that Andrews deliberately lured
10 Plaintiff to the meeting in order to effectuate Plaintiff's false arrest by Andrews's subordinates.
11 (*Id.*). When Plaintiff arrived at the offices of the Enforcement Division, Defendants Heiman and
12 Russ Neil confronted him with two other officers. (*Id.* ¶ 16). Heiman and Neil escorted Plaintiff
13 to a room and asked him to place his hands on the table. (*Id.*). Neil frisked Plaintiff and told him
14 he was under arrest for an unspecified felony and that Defendants were going to take him to the
15 Washoe County Detention Center. (*Id.* ¶ 17). Heiman commented that the search indicated
16 Plaintiff's penis was "the size of a Chapstick." (*Id.* ¶ 17). Plaintiff alleges implicitly that the
17 events in this room were recorded. (*See id.*). Heiman and Neil left Plaintiff under the supervision
18 of an unidentified officer, and when they returned they told Plaintiff that he had two options: (1)
19 be escorted by the agents to Harrah's to repay the overpayment; or (2) go to jail. (*Id.* ¶ 18).
20 Plaintiff agreed to repay the alleged overpayment under duress. (*See id.* ¶ 19). Heiman and Neil
21 took Plaintiff to Harrah's in a government car, where they met the casino operations manager,
22 who escorted them to the cashier's cage, where Plaintiff paid the alleged overpayment of $950.
23 (*Id.* ¶ 20). One of the agents said, "I'll call you later, buddy!" to the casino operations manager
24 as the agents escorted Plaintiff back to the government car. (*Id.*).

25     Plaintiff sued Harrah's Operating Co., Inc. ("Harrah's"), Heiman, Neil, and Andrews in

this Court on fifteen causes of action. (*See* Compl., ECF No. 1). The First Amended Complaint ("FAC") lists fourteen causes of action: (1) Civil Conspiracy; (2) Conversion; (3) Defamation; (4) Fourth Amendment Violations pursuant to 42 U.S.C. § 1983; (5) First Amendment Violations pursuant to 42 U.S.C. § 1983; (6) Conspiracy to Violate Plaintiff's Civil Rights pursuant to 42 U.S.C. § 1983; (7) False Arrest; (8) False Imprisonment; (9) Battery; (10) Intentional Infliction of Emotional Distress ("IIED"); (11) Fifth and Sixth Amendment Violations pursuant to 42 U.S.C. § 1983; (12) Respondeat Superior liability against Harrah's; (13) Negligent Supervision against Harrah's; and (14) Declaratory and Injunctive Relief.

On July 7, 2009, Judge Brian E. Sandoval granted the State Defendants' motion to dismiss in part, leaving only the fourth and sixth causes of action as against them. (*See* Order 13:27–14:3, July 7, 2009, ECF No. 23). The Court dismissed the third, forth, fifth, seventh, eighth, ninth, tenth, eleventh, and fourteenth causes of action as against Harrah's, leaving the first, second, sixth, twelfth and thirteenth causes of action. (*See* Order 6:13–18, Feb. 22, 2010, ECF No. 41). The Court later granted summary judgment on all remaining causes of action except the unreasonable seizure and civil rights conspiracy claims under 42 U.S.C. § 1983. (*See* Order 14:3–6, Oct. 20, 2010, ECF No. 60). Heiman and Neil took an immediate appeal of the adverse qualified immunity ruling, and the Court of Appeals reversed. Harrah's has now asked the Court to reconsider the denial of summary judgment as against Harrah's.

**II.    ANALYSIS**

Harrah's asks the Court to reconsider its denial of summary judgment to Harrah's on the § 1983 conspiracy claim. Although styled as a motion to reconsider, Harrah's essentially asks the Court to grant it summary judgment against Plaintiff's § 1983 conspiracy claim in light of the Court of Appeals' ruling that Harrah's alleged coconspirators are immune from that claim. Harrah's argues that because the alleged conspirators are immune from suit, there cannot be any conspiracy involving Harrah's. Plaintiff responds that Harrah's alleged coconspirators'

1  immunity from suit has nothing to do with whether they in fact conspired with Harrah's for the
2  purposes of Harrah's own liability.  Harrah's itself is not immune from suit.
3        The merits of the § 1983 claims were not appealed and are not yet appealable.  The
4  qualified immunity issue alone was immediately appealable, because "[q]ualified immunity is 'an
5  immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is
6  effectively lost if a case is erroneously permitted to go to trial.'" *Scott v. Harris*, 550 U.S. 372,
7  376 n.2 (2007) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  If a defendant were
8  forced to wait until after trial to obtain review of an order denying his claim to be immune from
9  standing trial at all, as opposed to a claim that he was simply not liable, the trial court's order
10  would be "effectively unreviewable." *Id.* (quoting *Mitchell*, 472 U.S. at 527).  Qualified
11  immunity is therefore not a determination of the merits, but a ruling that a particular defendant
12  cannot even be tried on the merits. *Maag v. Wessler*, 993 F.2d 718, 720 (9th Cir. 1993).
13        Still, under the two-step framework established by the Supreme Court, a qualified
14  immunity ruling could preclude a claim on the merits.  An official is not entitled to qualified
15  immunity if: (1) there has been a constitutional violation; and (2) the state of the law was clear
16  enough at the time of the violation that a reasonable person in the defendant's position would
17  have known his actions violated the plaintiff's rights. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).
18  A court has discretion to analyze the second prong first in order to avoid unnecessary
19  constitutional rulings. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  If a court were to rule
20  based upon the first *Saucier* prong, i.e., that there simply was no constitutional violation, then
21  that issue would be precluded from relitigation.
22        In the present case, however, the Court of Appeals based its qualified immunity ruling on
23  the second *Saucier* prong. *See Conner v. Heiman*, 672 F.3d 1176, 1133 (9th Cir. 2012) ("We
24  think Neil and Heiman *could have reasonably concluded* that they had probable cause . . . . Thus,
25  *a reasonable officer would not find it 'clear'* that Neil and Heiman violated the Fourth

1  Amendment . . . . Because Neil and Heiman did not violate *clearly established* Fourth
2  Amendment rights . . . ." (emphases added)). The Court of Appeals did not determine whether
3  Neil or Heiman in fact had probable cause under the first *Saucier* prong. Harrah's is simply
4  incorrect when it states in its motion that the Court of Appeals held that Neil and Heiman did not
5  violate Plaintiff's rights. Harrah's cites *Saucier* for the proposition that a court should determine
6  the first *Saucier* prong first; from there, Harrah's reasons that because the Court of Appeals
7  found Neil and Heiman to be immune, it necessarily found that Neil and Heiman did not violate
8  Plaintiff's rights. This is a non sequitur. Harrah's ignores the *Pearson* rule that permits courts to
9  perform the *Saucier* analysis in either order, overruling that portion of *Saucier* requiring courts to
10 examine the first *Saucier* prong first. *See Pearson*, 555 U.S. at 236. In this case, the Court of
11 Appeals ruled based on the second *Saucier* prong. *See Conner*, 672 F.3d at 1133. Therefore,
12 although Neil and Heiman are immune from suit for either an illegal seizure or a related civil
13 rights conspiracy, *see id.*, the actual question of their probable cause to arrest Plaintiff has simply
14 not been determined, *see generally id.*, and Plaintiff is therefore not collaterally estopped from
15 asserting that Neil and Heiman did not have probable cause to arrest him, or, by extension, that
16 they and Harrah's conspired to deprive him of his constitutional rights against unreasonable
17 seizure.

**CONCLUSION**

19  IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 99) is DENIED.
20  IT IS SO ORDERED.
21 Dated this 2nd day of October, 2012.

_____
ROBERT C. JONES
United States District Judge