1
2
3
4          **UNITED STATES DISTRICT COURT**
5             **DISTRICT OF NEVADA**
6
7   WILLIAM H. CONNER,                         )
                                               )
8              Plaintiff,                      )
                                               )        3:08-cv-00633-RCJ-VCF
9        vs.                                   )
                                               )
10  HARRAH'S OPERATING CO., INC. et al.,       )        **ORDER**
                                               )
11             Defendants.                     )
    _____   )

12          This case arises out of an alleged conspiracy between a Reno casino and three employees

13  of the Nevada Gaming Control Board ("the Board") to recover an accidental overpayment made

14  at a baccarat game through the threat of criminal prosecution despite a lack of probable cause.

15  Pending before the Court are Plaintiff William H. Conner's Motion for New Trial (ECF No. 150)

16  and Defendant Harrah's Operating Co., Inc.'s ("Harrah's") Motion for Attorney's Fees (ECF No.

17  146).  For the reasons given herein, the Court denies the motions, except that Defendants are

18  entitled to costs.

19  **I.     FACTS AND PROCEDURAL HISTORY**

20          On July 19, 2008, Plaintiff William H. Conner was gambling at a baccarat table at

21  Harrah's Hotel and Casino in Reno, Nevada when he took his winnings and moved to another

22  baccarat table. (First Am. Compl. ¶¶ 2, 5).  After forty minutes, a Harrah's manger interrupted

23  the game and told Plaintiff that he had been overpaid at the first table. (*Id.* ¶¶ 6–7).  Although the

24  manager indicated the incident had been captured on film, Harrah's never produced the film

25  because the manager admitted it would not show any overpayment; Plaintiff also believes the

security officer watching the film during the alleged overpayment could not attest to any
overpayment. (*See id.* ¶¶ 8, 10–11, 21).

The following morning, Plaintiff met with the casino operations manager who accused
Plaintiff of having taken an overpayment, although he did not claim to know the amount. (*Id.*
¶ 9).  At the end of the meeting, the casino operations manager told Plaintiff that a gaming
control agent would call him. (*Id.* ¶ 13).  After the meeting, Defendant Steve Heiman called
Plaintiff, and Plaintiff again refuted the allegations that he had been overpaid. (*Id.* ¶ 14).

Plaintiff then contacted Heiman's supervisor, Defendant David Andrews, to arrange a
meeting at the offices of the Board. (*Id.* ¶ 15).  Plaintiff alleged that Andrews deliberately lured
Plaintiff to the meeting in order to effectuate Plaintiff's false arrest by Andrews's subordinates.
(*Id.*).  When Plaintiff arrived at the offices of the Enforcement Division, Defendants Heiman and
Russ Neil confronted him with two other officers. (*Id.* ¶ 16).  Heiman and Neil escorted Plaintiff
to a room and asked him to place his hands on the table. (*Id.*).  Neil frisked Plaintiff and told him
he was under arrest for an unspecified felony and that Defendants were going to take him to the
Washoe County Detention Center. (*Id.* ¶ 17).  Heiman commented that the search indicated
Plaintiff's penis was "the size of a Chapstick." (*Id.* ¶ 17).  Plaintiff alleges implicitly that the
events in this room were recorded. (*See id.*).  Heiman and Neil left Plaintiff under the supervision
of an unidentified officer, and when they returned they told Plaintiff that he had two options: (1)
be escorted by the agents to Harrah's to repay the overpayment; or (2) go to jail. (*Id.* ¶ 18).
Plaintiff agreed to repay the alleged overpayment under duress. (*See id.* ¶ 19).  Heiman and Neil
took Plaintiff to Harrah's in a government car, where they met the casino operations manager,
who escorted them to the cashier's cage, where Plaintiff paid the alleged overpayment of $950.
(*Id.* ¶ 20).  One of the agents said, "I'll call you later, buddy!" to the casino operations manager
as the agents escorted Plaintiff back to the government car. (*Id.*).

Plaintiff sued Harrah's Operating Co., Inc. ("Harrah's"), Heiman, Neil, and Andrews in

this Court on fifteen causes of action. (*See* Compl., ECF No. 1). The First Amended Complaint

("FAC") listed fourteen causes of action: (1) Civil Conspiracy; (2) Conversion; (3) Defamation;

(4) Fourth Amendment Violations pursuant to 42 U.S.C. § 1983; (5) First Amendment Violations

pursuant to § 1983; (6) Conspiracy to Violate Plaintiff's Civil Rights pursuant to § 1983; (7)

False Arrest; (8) False Imprisonment; (9) Battery; (10) Intentional Infliction of Emotional

Distress ("IIED"); (11) Fifth and Sixth Amendment Violations pursuant to § 1983; (12)

Respondeat Superior liability against Harrah's; (13) Negligent Supervision against Harrah's; and

(14) Declaratory and Injunctive Relief.

On July 7, 2009, Judge Brian E. Sandoval granted the State Defendants' motion to

dismiss in part, leaving only the fourth and sixth causes of action as against them. (*See* Order

13:27–14:3, July 7, 2009, ECF No. 23). The Court dismissed the third, forth, fifth, seventh,

eighth, ninth, tenth, eleventh, and fourteenth causes of action as against Harrah's, leaving the

first, second, sixth, twelfth and thirteenth causes of action. (*See* Order 6:13–18, Feb. 22, 2010,

ECF No. 41). The Court later granted summary judgment on all remaining causes of action

except the unreasonable seizure and civil rights conspiracy claims under § 1983. (*See* Order

14:3–6, Oct. 20, 2010, ECF No. 60). Heiman and Neil took an immediate appeal of the adverse

qualified immunity ruling, and the Court of Appeals reversed. The Court conducted a jury trial

on the sixth cause of action, as against Harrah's. The jury returned a verdict for Harrah's.

Harrah's has asked the Court to award it attorney's fees under 42 U.S.C. § 1988 and Rule 68.

## II.    LEGAL STANDARDS

### A.    New Trial

After a jury trial, a district court may order a new trial for any reason a new trial had been

granted in an action at law in federal court as of the adoption of Rule 59 in 1937. *See* Fed. R.

Civ. P. 59(a)(1)(A).

///

### B. Attorney's Fees

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. Proc. 54(d)(1). "A claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages." Fed. R. Civ. P. 54(d)(2)(A). An award of attorney's fees must rely on a statute or rule independent from Rule 54 itself. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii).

### 1. 42 U.S.C. § 1988

A prevailing party in a § 1983 action may obtain attorney's fees against the losing party, *see* 42 U.S.C. § 1988(b), but whereas prevailing plaintiffs are normally awarded fees, prevailing defendants are normally not:

> Under § 1988, a court in its discretion may award reasonable attorneys' fees in a suit seeking to enforce §§ 1981, 1983, or 2000d. However, because Congress wanted to encourage individuals to seek relief for violations of their civil rights, § 1988 operates asymmetrically. A prevailing plaintiff may receive attorneys' fees as a matter of course, but a prevailing defendant may only recover fees in "exceptional circumstances" where the court finds that the plaintiff's claims are "frivolous, unreasonable, or groundless." *Harris v. Maricopa Cnty. Superior Court*, 631 F.3d 963, 971 (9th Cir. 2011) (internal quotations omitted). Where the plaintiff asserts both frivolous and non-frivolous claims, only fees attributable exclusively to the plaintiff's frivolous claims are recoverable. *See id.* at 971–72; *Fox v. Vice*, —— U.S. ——, 131 S. Ct. 2205, 2215, 180 L. Ed.2d 45 (2011) ("Section 1988 permits the defendant to receive only the portion of his fees that he would not have paid but for the frivolous claim."). "[W]here a plaintiff in a § 1983 action alleges multiple interrelated claims based on the same underlying facts, and some of those claims are frivolous and some are not, a court may award defendants attorneys fees with respect to the frivolous claims only when those claims are not 'intertwined.'" *Harris*, 631 F.3d at 973 n.2 (discussing *Tutor–Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1063–64 (9th Cir. 2006)); *accord Fox*, 131 S. Ct. at 2217 (discussing the "interrelated[ness]" of plaintiffs' frivolous and non-frivolous claims).

*Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012). "A case may be deemed frivolous only when the 'result is obvious or the . . . arguments of error are wholly without merit.'" *Karam v. City of Burbank*, 352 F.3d 1188, 1195 (9th Cir. 2003) (quoting *McConnell v. Critchlow*, 661 F.2d 116, 118 (9th Cir. 1981) (citation omitted)).

1    **2.    Rule 68**

2        "If the judgment that the offeree finally obtains is not more favorable than the unaccepted

3    offer, the offeree must pay the costs incurred after the offer was made." Fed. R. Civ. P. 68(d).

4    Although the result may seem contrary to the purpose of the rule, Rule 68 does not apply by its

5    text where an offeree obtains no judgment at all, as here. *Delta Air Lines v. August*, 450 U.S.

6    346, 352 (1981) ("In sum . . . it is clear that [Rule 68] applies only to offers made by the

7    defendant and only to judgments obtained by the plaintiff.  It therefore is simply inapplicable to

8    this case because it was the defendant that obtained the judgment.").

9    **III.    ANALYSIS**

10       **A.    New Trial**

11       Plaintiff argues that a new trial is warranted because the jury "showed a manifest

12   disregard for the Court's instructions" by returning a verdict "not supported by substantial

13   evidence."  The Court disagrees.  "Substantial evidence is evidence adequate to support the jury's

14   conclusion, even if it is also possible to draw a contrary conclusion from the same evidence."

15   *Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001).  Plaintiff

16   argues that the video tape of the overpayment shown at trial had an electronic label of Table 320,

17   but that Plaintiff was playing at Table 316, making the jury's finding of probable cause to be

18   without substantial evidence.  But the jury had substantial evidence from which they could have

19   found probable cause.  The jury heard evidence that the baccarat dealer had identified Mr.

20   Conner as the person who received an overpayment.  As Plaintiff notes in his motion, the jury

21   asked whether it should assume that the label of "Table 320" on the video was correct, and the

22   Court responded that it was for the jury to consider all of the evidence.  The jury apparently

23   concluded that the electronic label on the video tape was simply inconsistent with the label on the

24   table on the gaming floor, and that the identification of Plaintiff by the baccarat dealer to other

25   Harrah's employees as the person who took an overpayment was sufficiently credible to

1   overcome the discrepancy in table labeling.  More accurately, the jury apparently believed that

2   the officers could have reasonably believed this.  The jury had sufficient evidence to have

3   decided this factual issue either way.  There was substantial evidence to support the finding of

4   probable cause, and the Court will not upset the jury's verdict based upon an argument over the

5   weight of the evidence.

6   **B.    Attorney's Fees**

7        Harrah's requests a total of $72,435.50 in attorney's fees and $2090.96 in costs.  Harrah's

8   is entitled to costs under Rule 54(d)(1).  Because Plaintiff won no judgment against it, Harrah's

9   is not entitled to attorney's fees under Rule 68.  *See Delta Air Lines*, 450 U.S. at 352.  Under

10  § 1988, Harrah's is entitled to fees for any expenses incurred due to having to defend against any

11  frivolous claims, i.e., those claims that were dismissed and as to which the propriety of dismissal

12  was obvious.

13       The following claims were pled against Harrah's: (1) Civil Conspiracy; (2) Conversion;

14  (3) Defamation; (6) Conspiracy to Violate Plaintiff's Civil Rights pursuant to § 1983; (7) False

15  Arrest; (8) False Imprisonment; (9) Battery; (10) Intentional Infliction of Emotional Distress

16  ("IIED"); (12) Respondeat Superior liability; (13) Negligent Supervision; and (14) Declaratory

17  and Injunctive Relief.  On January 27, 2009, Harrah's filed a seven-page Answer (ECF No. 7) to

18  the Complaint.  On February 26, 2009, Harrah's filed a one-page Joinder (ECF No. 16) to the

19  agents' Motion to Dismiss First Amended Complaint (ECF No. 15).  On March 16, 2009,

20  Harrah's filed a four-page Response (ECF No. 19) to Plaintiff's motion to strike the Joinder.  On

21  July 7, 2009, the Court denied the motion to strike the Joinder but ordered Harrah's to file

22  separate points and authorities in support of its own motion to dismiss.  On July 23, 2009,

23  Harrah's filed its ten-page Motion to Dismiss (ECF No. 26).  On August 21, 2009, Harrah's filed

24  a five-page Reply (ECF No. 30) to Plaintiff's response to its Motion to Dismiss.

25       On February 22, 2010, the Court granted Harrah's motion to dismiss in part, dismissing

1  the following claims, with prejudice: defamation, fourth amendment violations, first amendment

2  violations, false arrest, false imprisonment, battery, IIED, fifth and sixth amendment violations,

3  and declaratory and injunctive relief. (*See* Order, Feb. 22, 2010, ECF No. 41).  On June 15, 2010,

4  Harrah's filed a Motion for Summary Judgment (ECF No. 47).  The remaining claims against

5  Harrah's at this stage were conversion, civil conspiracy, § 1983 conspiracy, negligent

6  supervision, and managerial liability.  On October 20, 2010, the Court granted Harrah's motion

7  as to every claim except the claim for § 1983 conspiracy. (*See* Order, Oct. 20, 2010, ECF No.

8  60).

9         The Court finds that neither the claims dismissed on February 22, 2010 nor those

10  summarily adjudicated on October 20, 2010 or proceeding to trial were frivolous for the purposes

11  of § 1988.  At trial, Plaintiff testified that he did not think he was not the person who was

12  overpaid, and the evidence was sufficient to have supported a verdict in Plaintiff's favor, though

13  the jury ultimately found against him.  Although Plaintiff failed to adduce evidence at the

14  summary judgment stage supporting this position, Plaintiff had a good faith basis for bringing his

15  claims.

16         Although the Court will not award fees, it must award costs.  The Court awards costs in

17  the amount of $1645.56, after subtracting $445.40 from the total amount requested in the Bill of

18  Costs as objected to by Plaintiff, because that amount was for Attorney Graber's travel to San

19  Francisco to attend oral argument on the interlocutory appeal of the qualified immunity ruling,

20  which appeal was not applicable to her client, Harrah's.  The Court grants a retroactive extension

21  of time for Plaintiff to object to the Bill of Costs.

22  ///

23  ///

24  ///

25  ///

**CONCLUSION**

IT IS HEREBY ORDERED that the Motion for New Trial (ECF No. 150) is DENIED.

IT IS FURTHER ORDERED that the Motion for Attorney's Fees (ECF No. 146) is GRANTED IN PART and DENIED IN PART.  Attorney's fees are denied, but costs are awarded in the amount of $1645.56.

IT IS SO ORDERED.

Dated this 11th day of March, 2013.

_____
ROBERT C. JONES
United States District Judge